Filed 7/19/23  P. v. Servin CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RUBEN SERVIN et al.,<br><br>    Defendant and Appellant. | B319745<br><br>(Los Angeles County<br>Super. Ct. No. VA077024) |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Defendant and appellant, Ruben Servin (defendant), appeals from the order denying his petition for resentencing, pursuant to Penal Code former section 1170.95, now section 1172.6.[1] The order followed an evidentiary hearing pursuant to section 1172.6, subdivision (d) and found the prosecution had met its burden to show beyond a reasonable doubt that defendant was not entitled to resentencing. Defendant contends the order was not supported by substantial evidence and should be reversed. We find no merit to that contention and affirm the order.

## BACKGROUND[2]

In 2004, the jury convicted defendant of multiple crimes related to the robbery, torture, and murder of Miguel Trejo (Trejo), as well as the robbery, burglary, and witness dissuasion of Alfonso Gomez (Gomez). Codefendants, Jesus Cisneros (Cisneros), Eric Fernandez (Fernandez), Alberto Hernandez (Hernandez), and Armando Salmon (Salmon), were also convicted of various charges related to the crimes.

Specifically, defendant was convicted of the following: first degree murder of Trejo (§ 187, subd. (a)); torture of Trejo (§ 206); second degree robbery of Trejo (§ 211); first degree robbery of

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We will refer to the section by its new numbering only.

All further unattributed code sections are to the Penal Code unless otherwise stated.

[2] We draw some of the following facts from our prior opinion where we affirmed the modified judgment in *People v. Cisneros* (June 29, 2006, B179596) [nonpub. opn.].

Gomez (§ 211); first degree burglary of Gomez (§ 459); and dissuading a witness, Gomez, from reporting a crime (§ 136.1, subd. (b)(1)).

As to first degree murder, the jury found true the special circumstance allegations of section 190.2, subdivision (a)(17), that the murder was committed during the commission of a robbery, and of section 190.2, subdivision (a)(18), that the murder involved the infliction of torture.  The jury also made the special findings that a principal was armed with a handgun during the commission of the crimes (§ 12022, subd. (a)(1)); that defendants inflicted great bodily injury during the robbery of Trejo (§ 12022.7, subd. (a)); that Salmon used and discharged a handgun in the crimes against Trejo (§§ 12022.5, subd. (a)(1), 12022.53, subds. (b)-(d)); and Fernandez and Salmon used a handgun in the crimes against Gomez (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)).

Defendant was sentenced to life imprisonment without the possibility of parole plus 11 years.  Our previous decision on June 29, 2006, in *People v. Cisneros*, *supra*, B179596, affirmed the judgment on direct appeal.

**Relevant trial evidence**

Trejo was murdered on June 8, 2003.  The night before, Gerardo Altamirano (Altamirano) and Cisneros picked up Hernandez and Trejo.  They drove to defendant's house around 11:00 p.m., where Salmon, Fernandez, and three other men were present.  Trejo and the men entered a shed in defendant's backyard.  Altamirano heard sounds of violence, including punches, screams, someone being knocked down, moaning, and duct tape being unrolled.  Hernandez asked Trejo about the whereabouts of stolen marijuana.  Altamirano then heard a

gunshot, and Salmon emerged from the shed, handing a gun to Altamirano.

Fernandez and Cisneros went in and out of the shed several times. During this time, Cisneros informed Altamirano that Trejo was being beaten because he was a "jacker," who had stolen marijuana. Altamirano declined Cisneros's offer to participate in the beating. Altamirano estimated the beating and questioning lasted about two hours before Trejo disclosed that the marijuana was at Gomez's apartment. Defendant also testified he heard gunshots, scuffling, and moaning coming from the shed.

Defendant's neighbor, whose bedroom window was about five or six feet from the shed, testified she was awakened at 2:30 a.m. by a voice begging for water, help, and forgiveness. She also heard the speaker providing directions to a location in Alhambra and asking that his handcuffs be removed.

Defendant remained with Trejo while Salmon, Altamirano, and the remaining men drove to Gomez's apartment, which was also Trejo's residence. Salmon distributed guns, and everyone except Altamirano entered the apartment.

Gomez testified that Fernandez entered his bedroom in the early morning hours, pointed a gun at his head, and cursed. Fernandez then covered Gomez's head with a blanket, which Gomez removed. Salmon then aimed his gun at Gomez's head and pulled the trigger, producing a clicking sound. Following that, Salmon placed a plastic bag over Gomez's head, handcuffed him, and tied his feet while demanding pills. Gomez could hear the voices of two or three other individuals, apart from Salmon and Fernandez. The men took Gomez's wallet containing $100, as well as his briefcase. Salmon warned Gomez that they would kill him if he called the police.

Forty-five minutes after they entered the Gomez apartment, the men returned to the car, carrying luggage that smelled of marijuana. Hernandez said they had tied up Gomez, put a plastic bag over his head, and taken his money. Upon reaching Salmon's apartment, Hernandez and Salmon unloaded the luggage, briefcase, and guns.

Back in the car, Hernandez called defendant and asked if Trejo was still alive, expressing his intention to finish him off. Defendant testified he had multiple telephone conversations with Hernandez after Hernandez left the shed to go to Gomez's apartment.

Defendant's neighbor awakened again to the sound of moaning and someone being kicked. She looked out the window and saw men cleaning out a car trunk. At 6:00 a.m., the neighbor called the police.

Altamirano testified that when they returned to defendant's house, Fernandez backed up his car to the shed. Defendant cleaned out the trunk, while Altamirano looked in the shed and saw Trejo lying motionless on the floor, leading him to believe Trejo was dead. Hernandez kicked Trejo in the head, commenting "that's what happens to jackers." Hernandez and Fernandez wrapped Trejo's body in a blanket and carried it to the car trunk. Altamirano then left.

Sheriff's deputies arrived at the residence shortly after 6:00 a.m., where they saw Cisneros, Fernandez, Hernandez, and defendant gathered around a car. The deputies apprehended the men as they fled in different directions. Upon returning to the residence, the deputies discovered Trejo's body wrapped in a blanket. Deputies found tape, handcuffs, a gun, and an electrical cord on defendant's property. Trejo's blood, as well as the paint

smeared on his body, matched the blood and paint found in Hernandez's, Cisneros', and defendant's vehicle.

The medical examiner testified Trejo had been strangled to death. Ligature marks on his neck indicated the use of an extension cord, requiring sustained compression for several minutes to cause death. Trejo's knee was fractured by a gunshot wound, and his swollen face and body had numerous cuts and bruises. He had sustained these injuries because he had been beaten with a blunt instrument in the face and head. Wrist injuries were consistent with handcuffing.

**Petition for resentencing**

Effective January 1, 2019, the Legislature amended the laws pertaining to felony murder and murder under the natural and probable consequences doctrine, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislature also added section 1172.6, which provides a procedure for persons convicted of murder to seek retroactive relief if they could not be convicted under sections 188 and 189 as amended effective January 1, 2019. (*People v. Lewis* (2021) 11 Cal.5th 952, 957.)

Defendant filed a section 1172.6 petition on July 8, 2019, alleging he had been convicted of murder under the felony murder rule or the natural and probable consequences doctrine and he was not the actual killer. The prosecutor filed a response in opposition to the petition.

The trial court reviewed the documents submitted by the parties, the reporter's transcript of the jury trial, and the record

6

of conviction. After hearing the argument of counsel, the court denied the petition on April 6, 2022, finding the evidence showed beyond a reasonable doubt that defendant aided and abetted in the murder with the intent to kill and that defendant was a major participant in the murder.

Defendant filed a timely notice of appeal from the denial of his petition for resentencing on April 8, 2022.

## CONTENTIONS ON APPEAL

Defendant contends the trial court's denial of his petition for resentencing should be reversed because there was not substantial evidence demonstrating he was a major participant in the torture and murder of Trejo. However, as discussed below, our review shows that there was substantial evidence he was a major participant and that he aided and abetted the torture and murder of Trejo.

In response the People argue the trial court should not have held a hearing on defendant's petition because the jury found defendant had the intent to kill in the special circumstance finding. Since we affirm the trial court order, we need not resolve this issue.

## DISCUSSION

At appointed counsel's request we have taken judicial notice of the appellate record in *People v. Cisneros, supra,* B179596, and we have reviewed the verdicts rendered against defendant, the jury instructions, and the procedural history.

## I.  Standard of Review

Section 1170.95, subdivision (d)(3), provides that at the evidentiary hearing, "the burden of proof shall be on the

7

prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder." The superior court acts as an independent fact finder, and the prosecution bears the burden of proving beyond a reasonable doubt the petitioner is guilty of murder or attempted murder under California law as amended by Senate Bill No. 1437. (§ 1172.6, subd. (d)(3); *People v. Garrison* (2021) 73 Cal.App.5th 735, 745.)

"We review the trial court's fact finding for substantial evidence." (*People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1087.) "We 'must review "the whole record in the light most favorable to the judgment" and decide "whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*Id.* at p. 1087.) "[W]e look to whether the prosecution has introduced sufficient evidence of ' " 'reasonable, credible, and of solid value' " ' to 'support a finding beyond a reasonable doubt' that [petitioner] had the requisite mental state." (*People v. Clark* (2016) 63 Cal.4th 522, 618.)

## II. Defendant did not show error regarding the aiding and abetting finding

The trial court denied defendant's petition on two, separate grounds: he had aided and abetted the murder of Trejo and he was a major participant in the murder of Trejo. Defendant's opening brief addresses only the finding that he was a major participant. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Since he failed to address the aiding and abetting ground for denying his petition, defendant has waived any challenge to this finding.

8

A person who aids and abets the commission of a crime is culpable as a principal in that crime. (§ 31.) Aiding and abetting is not a separate offense but a form of derivative liability for the underlying crime. (*People v. Francisco* (1994) 22 Cal.App.4th 1180, 1190.) Under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

The trial court made detailed findings in support of the conclusion defendant aided and abetted the murder of Trejo, including defendant made his residence available for the murder when he met Hernandez, Altamirano and Trejo at the gate and allowed them to enter his backyard. Additionally, defendant was aware of the demands on Trejo for the stolen marijuana, the torture of Trejo to obtain the location of the marijuana, and the gunshots that injured Trejo. Plus, defendant was left to guard Trejo in the shed when the others left to retrieve the drugs. Further, defendant knew the others planned to kill Trejo because he was called by Hernandez and advised of the intent to kill Trejo. Defendant was also present when the car was brought to the shed for the purpose of transporting Trejo's body. Based on these findings, the trial court concluded "Mr. Servin clearly aided and abetted this murder" and the evidence showed "he had intent to kill" Trejo beyond a reasonable doubt because he knew the others had the unlawful intent to murder Trejo and he had the intent to assist them in achieving their unlawful ends.

The finding that defendant aided and abetted the murder of Trejo was grounds to deny his petition because a direct aider and

9

abettor to murder must possess malice aforethought. (*People v. Gentile* (2020) 10 Cal.5th 830, 848.) By failing to raise and address this finding with reasoned arguments and legal citations, defendant has waived the opportunity for review.

This alone provides sufficient ground to affirm the denial of defendant's petition.

## III. Defendant was a major participant in the murder of Trejo

The trial court also concluded, beyond a reasonable doubt, that defendant was a major participant in the murder of Trejo and acted with reckless indifference to human life. As interpreted and clarified by the Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and then in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), the determination whether a defendant is a major participant who acted with reckless indifference to human life for the purpose of criminal liability requires a careful review of the case-specific facts, analyzed against a nonexclusive list of factors. These include: (1) the defendant's role in planning the crime; (2) his role in supplying or using lethal weapons; (3) his awareness of the "particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants"; (4) his presence at the scene of the killing and thus whether he was "in a position to facilitate or prevent the actual murder"; and (5) his actions after the use of lethal force. (*Banks*, at p. 803; see *Clark*, at p. 611.)

Reckless indifference "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark, supra*, 61 Cal.4th at p. 617.) Reckless

10

indifference to human life has a subjective and an objective element.  (*Ibid*.)  As to the subjective element, "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed," and he or she must consciously disregard "the significant risk of death his or her actions create."  (*Banks*, *supra*, 11 Cal.4th at p. 801; see *Clark*, at p. 617.)  As to the objective element, " '[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' "  (*Clark*, at p. 617, quoting Model Pen. Code, § 2.02, subd. (2)(c).)

Here, the trial court conducted a thorough analysis of the evidence before reaching its conclusion that defendant was a major participant, acting with a reckless indifference for life.  First, the court found defendant played a role in planning the crime by allowing the others to use his property and shed for the torture and murder of Trejo.  Moreover, defendant was aware of the dangers posed by the severe beatings and gunshots inflicted during the torture.  Defendant was present at the location of the torture and murder on his property and did not act to prevent the crimes.  Additionally, he was in a position to either facilitate or prevent the murder when he ensured Trejo remained a captive while the others were retrieving drugs from the location they obtained by torturing Trejo.  Defendant was also aware that holding Trejo captive would result in Trejo's murder because Hernandez had informed him of his intention to kill Trejo when he returned.  Finally, defendant aided in the concealment of the crimes by assisting with the vehicle intended to transport Trejo's

11

body away from his property. These findings provide substantial evidence in support of the conclusion that, beyond a reasonable doubt, defendant was a major participant in the torture and murder of Trejo.

Further the trial court found defendant was aware of and willingly involved in the torture and murder of Trejo because he made his property and shed available for those crimes. Since Hernandez advised defendant he would kill Trejo, defendant was consciously disregarding the significant risk of death created by ensuring Trejo did not escape while the others left to recover the drugs.

Substantial evidence supports the finding that, beyond a reasonable doubt, defendant acted with a reckless indifference for life.

## DISPOSITION

The order denying appellant's petition for resentencing under Penal Code section 1172.6 is affirmed.

NOT TO BE PUBLISHED.

_____
CHAVEZ, J.

We concur:


_____
ASHMANN-GERST, Acting P. J.



_____
HOFFSTADT, J.